Filed 8/3/26  Lopez v. Wilhelm Electric Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| GONZALO GABRIEL LOPEZ, | |
| Plaintiff and Appellant, | G065639 |
| v. | (Super. Ct. No. 30-2020-01156888) |
| WILHELM ELECTRIC CO., INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge. Affirmed.

J. Gill Law Group, Jasmin K. Gill; Love Law and Calvin F. Love for Plaintiff and Appellant.

Morasse Collins & Clark and Steven R. Morasse for Defendants and Respondents.

*   *   *

Plaintiff Gonzalo Gabriel Lopez filed a class action and representative Private Attorneys General Act (PAGA; Lab. Code[1] § 2698 et seq.) lawsuit against his former employer for various violations of the Labor Code, including failure to pay overtime. (See § 510.) After a bench trial, the court found Lopez had failed to prove his claims.

On appeal, Lopez isolates one footnote in the trial court's statement of decision as supposed proof that the court did indeed find the employer had failed to pay overtime on at least two occasions. Consequently, Lopez argues, his employer should have been held liable under section 510—and he should have had standing to pursue a claim under PAGA—even though the failure to pay may have been, according to the trial court, "an inadvertent clerical error." We find no error and affirm.

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[2]

Lopez worked for Wilhelm Electric Company, Inc. (Wilhelm Electric) from July 2019 to November 2019 as an electrician apprentice and was paid $22 per hour. He worked primarily at jobsites in Irvine and

---

[1] All undesignated statutory references are to the Labor Code.

[2] Lopez does not dispute the trial court's factual findings relevant to the issue on appeal; rather, he only raises issues of law. We therefore derive this section largely from the trial court's statement of decision dated March 28, 2025. (See *Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 ["Under the general rules applicable to a trial court's statement of decision, an appellate court independently reviews questions of law and applies the substantial evidence standard to findings of fact"].)

Torrance, but also at a jobsite in Ontario. In Irvine, his hours were 6:00 a.m. to 2:30 p.m. At Torrance, they were "'sometimes'" 5:00 a.m. to 1:30 p.m.

In August 2020, Lopez filed a class and representative action complaint against Wilhelm Electric and its owner, John Wilhelm, for failure to pay overtime wages and minimum wages, unfair business practices (Bus. & Prof. Code, § 17200 et seq.), and failure to provide meal and rest breaks in addition to waiting time penalties and other Labor Code violations. In the complaint, Lopez alleged he was an aggrieved employee under PAGA and had the right to recover civil penalties plus reasonable attorney fees and costs.

Lopez filed a motion for class certification in April 2022, which the trial court granted as to six of seven potential classes and subclasses. The court ordered the PAGA and unfair business practices claims to be tried to the court first. After hearing testimony and taking evidence, the court found Lopez and his witnesses lacked credibility because their testimony was vague, evasive, and inconsistent.

When addressing the issue of PAGA standing, the trial court found Lopez had not proven that he had suffered one or more of the code violations alleged. Specifically, Lopez had not shown that defendants failed to pay him for the time he worked before and after his scheduled start and stop times and during meal and rest periods.

In a footnote in its statement of decision, the trial court noted defendants' counsel sent a letter to Lopez's counsel enclosing a check for $211 on July 29, 2021. This amount was for 7.45 overtime hours worked on August 10, 2019, and for 8.0 overtime hours worked on September 28, 2019. Wilhelm Electric reimbursed Lopez for "'16 hours at half Lopez's hourly rate of $22.00 per hour' plus interest" because those hours had been incorrectly recorded on Lopez's handwritten timecards as regular hours rather than

3

overtime hours. The court found Wilhelm Electric had not paid Lopez for those overtime hours only due to "an inadvertent clerical error resulting from Lopez's errors in completing his timecards, which does not support a finding of violation of section 510."

Lopez filed a timely appeal.

DISCUSSION

In order to be an "aggrieved employee" with standing to pursue claims on behalf of all similarly situated employees under PAGA, the employee must be "affected by at least one Labor Code violation committed by an employer." (*Huff v. Securitas Security Services. USA, Inc.* (2018) 23 Cal.App.5th 745, 750–751.) The court found Lopez was not a credible witness. It also found he did not prove he was affected by at least one code violation. As such, he lacked standing to move forward.

The sole issue raised by Lopez on appeal is whether the trial court erred by finding the failure to pay overtime on August 10 and September 28, 2019, did not violate section 510 because it was "inadvertent" rather than intentional. Lopez concedes for purposes of this appeal that the failure to pay him overtime for August 10 and September 28, 2019 was indeed inadvertent. But he contends an employer need not have intent to violate section 510; the failure to pay is in itself the violation. As a result, Lopez argues, the trial court should have found that he has standing under PAGA. "Where the relevant facts are undisputed, the interpretation and application of a statute presents a question of law subject to de novo review." (*Miller v. Collectors Universe, Inc.* (2008) 159 Cal.App.4th 988, 999 (*Miller*).)

4

# I.

## THE TRIAL COURT CORRECTLY FOUND THAT AN INADVERTENT CLERICAL ERROR IS NOT A BASIS FOR A SECTION 510 VIOLATION AND THAT LOPEZ LACKED STANDING

"Two overarching interpretive principles guide our analysis [of section 510]. First, the obligation to pay premium pay for overtime work reflects a state policy favoring an eight-hour workday and a six-day 40-hour workweek, and discouraging employers from *imposing* work in excess of those limits. [Citations.] Second, the state's labor laws are to be liberally construed in favor of worker protection." (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 561-562, italics added, fn. omitted.) In interpreting the statute, "we are obligated to prefer an interpretation that discourages employers from imposing overtime work and that favors the protection of the employee's interests." (*Id.* at p. 562.)

We also keep in mind that Lopez's section 510 claim was being assessed in the context of whether he had standing under PAGA. "The purpose of PAGA is to increase the [Labor Workforce Development Agency]'s limited enforcement capability by authorizing aggrieved employees to enforce Labor Code provisions on the agency's behalf. [Citation.] . . . [¶] The civil penalties imposed under PAGA ""are *intended to punish the wrongdoer and to deter future misconduct.*""" (*Hutcheson v. Superior Court* (2022) 74 Cal.App.5th 932, 938–939, italics added.) "As a general rule, 'courts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions.' [Citations.] If an injured party is fully compensated, penalties will generally not be imposed unless 'there has been a grossly negligent, willful or fraudulent breach of a duty.' [Citation.] Much like punitive damages, civil penalties are frequently aimed

5

at some "'positive element of conscious wrongdoing'" or bad faith." (*Naranjo v. Spectrum Security Services, Inc.* (2024) 15 Cal.5th 1056, 1074–1075.) "Those who proceed on a reasonable, good faith belief that they have conformed their conduct to the law's requirements do not need to be deterred from repeating their mistake, nor do they reflect the sort of disregard of the requirements of the law and respect for others' rights that penalty provisions are frequently designed to punish." (*Id.* at p. 1075.)

Additionally, Lopez's lawsuit was brought pursuant to section 1194, which states: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." (*Id.*, subd. (a).) The California Supreme Court has stated that the definition of "employ" under section 1194 is to be defined pursuant to the applicable wage order issued by the Industrial Welfare Commission (IWC). (See *Martinez v. Combs* (2010) 49 Cal.4th 35, 66.)

A.    *Employer Knowledge or Awareness*

Here, as the trial court correctly noted, IWC wage order No. 16-2001 is relevant as it applies to most persons employed in on-site construction. (See Cal. Code Regs., tit. 8, § 11160, subd. (1).)[3] Under this wage order, an "'[e]mployee'" is defined as "any person employed by an

---

[3] We acknowledge *Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560, 1584 and *Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429, 440 have invalidated section 10(E) of IWC wage order No. 16-2001. The invalidated provision in the wage order is not relevant to this case.

6

employer"; and the term "'[e]mploy' means to engage, suffer, or permit to work." (*Id.*, subd. 2(G), (H).) "Although our state cases have not interpreted the phrase, federal cases have discussed the meaning of 'suffer or permit to work' . . . under the [Fair Labor Standards Act]. (29 U.S.C. § 203(g).) "'[T]he words 'suffer' and 'permit' as used in the statute mean 'with the knowledge of the employer.'" [Citation.] Thus an employer who knows or should have known that an employee is or was working overtime must comply with the provisions of [29 U.S.C.] § 207 [maximum hours].' (*Forrester v. Roth's I. G. A. Foodliner, Inc.* (9th Cir. 1981) 646 F.2d 413, 414; see also 29 C.F.R §§ 785.11, 785.13.)" (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 585.)

The necessary corollary to the rule stated in *Forrester v. Roth's I. G. A. Foodliner, Inc.* (9th Cir. 1981) 646 F.2d 413 (*Forrester*) is that an employer who did not know, and had no reason to know, that the employee had worked overtime should not be held liable for violation of the overtime compensation statute.[4] This corollary finds support in *Jong v. Kaiser Foundation Health Plan, Inc.* (2014) 226 Cal.App.4th 391 (*Jong*), a case cited by defendants. The *Jong* court acknowledged section 1194 does not state or imply that it should be interpreted in line with cases under the Fair Labor

---

[4] As Lopez points out, such a principle is expressed elsewhere in the Labor Code. In section 226 regarding the provision of itemized wage statements, for example, the Legislature provides that employees may sue only on "a knowing and intentional failure" to provide wage statements, and that "an isolated and unintentional payroll error due to a clerical or inadvertent mistake" does not rise to the level of a knowing and intentional failure. (§ 226, subd. (e)(1), (3).) Lopez argues the Legislature could have added such language to section 510 but did not. We do not find this persuasive. Section 510 does not establish a private right of action the way section 226 does. Thus, the Legislature's failure to use similar wording in section 510 does not suggest that it intended to allow PAGA claims based on inadvertent violations of section 510.

Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.). (*Jong*, at p. 395.) However, in *Jong*, the trial court and the parties both "assumed the applicability under the Labor Code of certain principles that federal courts have applied in similar cases under" the FLSA. (*Jong*, at p. 395.)

As a result, the appellate court quoted *Forrester* favorably: "'where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [29 U.S.C.] § 207.' [Citation.] . . . 'This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of § 207(a).'" (*Jong, supra*, 226 Cal.App.4th at p. 395.)

## B.    *Lopez's Error*

The trial court's full statement in its footnote was: "There is no evidence the payment of Lopez's wages for those pay periods was anything other than an inadvertent clerical error *resulting from Lopez's errors in completing his timecards*, which does not support a finding of violation of section 510." (Italics added.) The court cited Lopez's timecards. For August 10, 2019, the timecard showed Lopez marked 7.45 hours in the "'REG' column." For September 28, 2019, his timecard showed 8.0 hours in the "'REG' column."

We construe the trial court's statement to mean that it found Wilhelm Electric had not compensated Lopez at his overtime rate because

8

*Lopez* had inaccurately marked the hours as regular rather than overtime. That is, the court found the inadvertent clerical error was Lopez's.

The findings of the trial court in a statement of decision are liberally construed in order to support the judgment. (See *Evans v. Thomason* (1977) 72 Cal.App.3d 978, 982, fn. 4.) Because the court found the error was committed by Lopez while filling out his timecards, the implicit finding is that Wilhelm Electric did not know Lopez had worked any overtime hours. Indeed, John Wilhelm affirmed that he authorized his counsel to send the payment only after he himself located the two errors in Lopez's timecards.

Lopez argues that Wilhelm Electric should have known from his timecards that he had worked overtime hours on August 10 and September 28, 2019. Lopez's timecard for the period of September 16–30, 2019, shows that during the week of September 23, he worked eight-hour days on Monday, Tuesday, Wednesday, Thursday, Friday, and Saturday. The same is true of the timecard entries for the week of August 5, 2019. On this basis, Lopez differentiates his case from a case like *Forrester* in which the employee had worked so-called "off-the-clock" overtime hours.

There is some truth to this argument. A more careful review of the two timecards in question might have revealed the error sooner or even at the time Lopez submitted them. But the fact remains these were two isolated recording errors that the employer corrected upon discovery. Keeping in mind our obligation to construe statutes "'so as to avoid absurd or unreasonable results'" (*Miller*, *supra*, 159 Cal.App.4th at p. 999), we cannot conclude these isolated clerical errors are sufficient to confer standing on Lopez to pursue civil penalties against defendants.

## DISPOSITION

The judgment is affirmed. Defendants to recover their costs on appeal.


SCHWARM, J.*

WE CONCUR:


MOTOIKE, P. J.


GOODING, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.